[Cite as *O'Conner v. Stires*, 2017-Ohio-8929.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| REGINA O'CONNER, et al., | : | |
| | | CASE NO. CA2017-04-008 |
| Plaintiffs-Appellees, | : | |
| | | O P I N I O N |
| | : | 12/11/2017 |
| - vs - | | |
| | : | |
| JASON STIRES, | : | |
| Defendant-Appellant. | : | |

APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. AD20110034

Mark J. Pitstick, 224 North Fayette Street, Washington C.H., Ohio 43160, for plaintiff-appellee

Melissa S. Upthegrove, 254 East Court Street, Washington C.H., Ohio 43160, for defendant-appellant

Judkins & Hayes, John W. Judkins, 303 West Jefferson Street, P.O. Box 33, Greenfield, Ohio 43160, for appellee, Teresa Chaffin

Jess C. Weade, Fayette County Courthouse, 110 East Court Street, Washington C.H., Ohio 43160, for appellee Fayette County Department of Job & Family Services

Kristina Oesterle, P.O. Box 314, Washington C.H., Ohio 43160, Guardian Ad Litem

**M. POWELL, J.**

{¶ 1}   Appellant, Jason Stires ("Father"), appeals a decision of the Fayette County

Court of Common Pleas, Juvenile Division, granting legal custody of his daughter, J.S., to the child's maternal grandmother, Teresa Chaffin ("Grandmother").[1]

{¶ 2} Regina O'Conner ("Mother") and Father are the unmarried parents of J.S., who was born in September 2010. The parties lived together from late 2009 to early 2013. Following the parties' separation, J.S. remained with Mother. The parties' testimony indicates that sometime in 2013, Father was granted standard parenting time with J.S. by court order.

{¶ 3} In July 2016, Mother was arrested and charged with several criminal offenses. J.S. was released to Grandmother. Upon release from jail, Mother entered into a safety plan with the Fayette County Department of Job & Family Services ("the Agency"). Under the safety plan, J.S. was to stay with Grandmother and Mother was to have supervised visitation.

{¶ 4} On July 21, 2016, Father moved for emergency custody. That same day, the juvenile court denied Father's motion for emergency custody, ostensibly construed Father's motion as a motion for custody, and scheduled a hearing for August 4, 2016. By judgment entry filed on August 5, 2016, the juvenile court granted temporary custody of J.S. to the Agency, noting the lack of evidence presented at the hearing, Mother's unresolved pending criminal charges, and the fact J.S. had been placed with Grandmother pursuant to the safety plan. Upon receiving temporary custody of J.S., the Agency placed the child with Grandmother. The safety plan was terminated. Father's parenting time with J.S. was increased.

{¶ 5} Subsequently, Grandmother moved for custody of J.S. In turn, Father filed a motion to modify parental rights and responsibilities, seeking custody. The juvenile court

_____

1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar.

held a hearing on the motions on March 7, 2017. Mother, Father, Grandmother, the guardian ad litem for J.S., a caseworker from the Agency, and two relatives testified at the hearing. Mother testified that in exchange for her recent guilty plea to criminal charges, she was going to be incarcerated for four years and nine months. Mother stated her desire that legal custody of J.S. be granted to Grandmother. Both at the hearing and in a report filed prior to the hearing, the guardian ad litem recommended that legal custody be granted to Grandmother and that Father's current parenting time be continued. The caseworker stated she had no concerns with either Father or Grandmother being granted legal custody. Father's relative testified Father had the ability to parent J.S. full time.

{¶ 6} On March 15, 2017, the juvenile court granted legal custody of J.S. to Grandmother and standard parenting time to Father. Upon considering the factors set forth in R.C. 3109.04(F)(1) and noting Mother's wish that Grandmother be granted legal custody, the fact that Grandmother and Father live in close proximity to one another, and Grandmother's shown adaptability in fostering visitation with both parents, the juvenile court found it was in the best interest of J.S. to grant legal custody to Grandmother. Father subsequently filed a motion for a new trial and relief from judgment which was denied by the juvenile court.

{¶ 7} Father now appeals, raising three assignments of error.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED WHEN IT AWARDED TEMPORARY CUSTODY OF THE MINOR CHILD TO CHILDREN SERVICES.

{¶ 10} Father argues the juvenile court did not have jurisdiction to grant temporary custody of J.S. to the Agency in August 2016 because the parties were before the court on Father's initial motion for custody, and not on a custody motion filed by the Agency.

{¶ 11} Juv.R. 13(A) allows a juvenile court to "make such temporary orders

- 3 -

concerning the custody or care of a child * * * as the child's interest and welfare requires." Thus, a juvenile court has authority to grant temporary custody as it deems necessary in light of the child's interest and welfare. *See Renz v. Renz*, 4th Dist. Athens No. 93 CA 1585, 1995 Ohio App. LEXIS 176 (Jan. 19, 1995); *In re Rodriguez*, 6th Dist. Ottawa No. OT-87-18, 1988 Ohio App. LEXIS 511 (Feb. 19, 1988). The juvenile court's August 5, 2016 judgment entry ordering that J.S. be placed into the temporary custody of the Agency was therefore pursuant to the court's authority under Juv.R. 13(A).

{¶ 12} Even if we were to find the juvenile court erred in granting temporary custody to the Agency, the error has no bearing on the ultimate outcome of the case because the temporary custody order has been superseded by the juvenile court's March 15, 2017 final custody determination granting legal custody to Grandmother and denying Father's motion for custody. *See Barry v. Rolfe*, 8th Dist. Cuyahoga Nos. 88459, 88460, 88676, 88680 thru 88686, and 88908 thru 88911, 2008-Ohio-3131 (juvenile court's temporary custody order was rendered moot by the court's final custody determination); *Ryan v. Ryan*, 5th Dist. Tuscarawas No. 2007AP030024, 2007-Ohio-6568; and *Kenney v. Kenney*, 12th Dist. Warren No. CA2001-04-036, 2001 Ohio App. LEXIS 5320 (Nov. 26, 2001) (when a trial court enters a final custody decision, the temporary custody order is superseded).

{¶ 13} Father's first assignment of error is overruled.

{¶ 14} Assignment of Error No. 2:

{¶ 15} THE COURT ABUSED ITS DISCRETION WHEN IT AWARDED CUSTODY TO A NONPARENT WITHOUT A FINDING OF UNSUITABILITY AND UTILIZING THE BEST INTEREST STANDARD IN A CUSTODY DETERMINATION BETWEEN [A] PARENT AND NON-PARENT VIOLATING APPELLEE'S CONSTITUTIONAL RIGHTS.

{¶ 16} Father argues the juvenile court erred in granting legal custody of J.S. to Grandmother, a nonparent, without first finding Father unsuitable. In support of his

- 4 -

argument, Father cites *In re Perales*, 52 Ohio St.2d 89 (1977).

{¶ 17} Child custody issues under Ohio law fall within the coverage of one of two statutes, R.C. 3109.04 or 2151.23, depending upon the circumstances. *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 13. R.C. 3109.04 applies to "any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child," and provides that if a trial court finds "it is in the best interest of the child for neither parent to be designated the residential parent and legal custodian of the child, it may commit the child to a relative of the child[.]" R.C. 3109.04(A) and 3109.04 (D)(2). R.C. 2151.23(A)(2) grants jurisdiction to the juvenile court "to determine the custody of any child not a ward of another court of this state." Because this case involves a custody dispute between a parent and nonparent and did not originate from divorce proceedings, R.C. 3109.04(D)(2) does not apply. *In re Hockstok* at ¶ 26.

{¶ 18} In a R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the trial court may not award custody to the nonparent without first making a finding of parental unsuitability, that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, contractually relinquished custody of the child, or has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child. *In re Perales* at syllabus. Subsequently, the supreme court reiterated that "in custody cases between a natural parent and nonparent, a parental unsuitability determination must be made and appear in the record before custody can be awarded to a nonparent." *In re Hockstok* at ¶ 36.

{¶ 19} However, a parental unsuitability finding is required only in the context of an original custody determination between a parent and a nonparent. *Anderson v. Anderson*, 12th Dist. Warren No. CA2009-03-033, 2009-Ohio-5636, ¶ 17. Once an original custody award has been made, the party seeking to modify the award must show a change of

circumstances even if the noncustodial party is a parent and the custodial party is a nonparent. *Id.*

{¶ 20} We find the case is before us on an original custody determination. Father and Mother were never married to one another. While the record indicates Father was granted parenting time with J.S. following the end of his relationship with Mother, there is no evidence of a prior adjudication or dispute between the parents regarding the custody of J.S. Mother was therefore J.S.'s residential parent and legal custodian from the time of her birth by operation of R.C. 3109.042(A), which provides, "An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian." *See In re S.S.L.S.*, 7th Dist. Columbiana No. 12 CO 8, 2013-Ohio-3026. Father's custody motion did not trigger a modification of custody; rather, it sought an initial custody determination. *See id.* The juvenile court's March 15, 2017 judgment entry granting legal custody to Grandmother is therefore not a legal change or modification of custody, but rather constitutes the initial custody determination.

{¶ 21} Neither *Perales* nor *Hockstok* involved an abused, neglected, or dependent child and both cases arose from a private custody dispute between a parent and nonparent. Likewise, this case does not involve an abused, neglected, or dependent child and arose from a custody dispute between Father and Grandmother. Consequently, the unsuitability test under *Perales* and *Hockstok*, rather than the best interest standard, applies.[2] Hence, the juvenile court was required to find, by a preponderance of the evidence, that Father was unsuitable, that is, that he had abandoned J.S., had contractually relinquished custody of

_____

2. For the same reasons, neither *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, nor *In re L.A.B.*, 12th Dist. Fayette No. CA2012-03-008, 2012-Ohio-5010, two cases cited by Grandmother in opposition to Father's argument, are applicable.

- 6 -

J.S., had become totally incapable of supporting or caring for J.S., or that an award of custody to Father would be detrimental to J.S.

{¶ 22} The juvenile court, however, never made a finding that Father was an unsuitable parent before awarding legal custody of J.S. to Grandmother.  Rather, the court engaged solely in a best interest analysis, which is contrary to *Perales* and the duty placed on the juvenile court.  *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 11.  The juvenile court's judgment entry further reflects the court engaged in a comparison analysis between Father and Grandmother.  However, "[t]his comparison is inappropriate under a suitability test.  The duty placed before the juvenile court is whether father is unsuitable; that is, whether custody with father would be detrimental to the child."  *Id.*  "Only after a finding of parental unsuitability, should the court then engage in a best-interest test to determine if custody to the nonparent is in the child's best interest."  *Id.* at ¶ 15.

{¶ 23} Accordingly, we find the juvenile court erred by applying the best interest standard to the facts of this case and failing to engage in a parental unsuitability analysis before awarding legal custody of J.S. to Grandmother.  *Id.* at ¶ 16; *In re Hockstok*, 2002-Ohio-7208 at ¶ 29.  The juvenile court's decision awarding legal custody to Grandmother is therefore reversed and the case is remanded to the juvenile court for a redetermination of custody under the correct legal standard of parental suitability.  *In re C.V.M.* at ¶ 16; *In re S.S.L.S.*, 2013-Ohio-3026 at ¶ 32.

{¶ 24} Father's second assignment of error is accordingly well-taken and sustained.

{¶ 25} Assignment of Error No. 3:

{¶ 26} THE TRIAL COURT'S DECISION WAS NOT IN THE BEST INTEREST OF THE CHILD, WAS * * * AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND [THE COURT] ABUSED ITS DISCRETION BY AWARDING CUSTODY TO THE MATERNAL GRANDMOTHER.

{¶ 27} Father argues that the juvenile court's decision awarding legal custody of J.S. to Grandmother is an abuse of discretion and against the manifest weight of the evidence. Father's third assignment of error is moot given our determination that the juvenile court's decision granting legal custody to Grandmother must be reversed and remanded.

{¶ 28} Judgment affirmed in part and reversed in part, and cause remanded to the juvenile court for further proceedings consistent with this opinion.

HENDRICKSON, P.J., and RINGLAND, J., concur.