[Cite as *In re R.*, 2019-Ohio-1198.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

|   |   |   |
|---|---|---|
| IN RE: | : | |
| | | CASE NO. CA2018-04-012 |
| R., N., and A. | : | |
| | | O P I N I O N |
| | : | 4/1/2019 |
| | : | |

APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 21640077

Samuel H. Shamansky, Co., L.P.A., Samuel H. Shamansky, 523 South Third Street, Columbus, OH 43215, for appellee

Grandmother, pro se

**M. POWELL, J.**

{¶ 1} Grandmother appeals the decision of the Madison County Court of Common Pleas, Juvenile Division, which denied her complaint for custody of her grandchildren. For the reasons described below, this court affirms the lower court's decision.

{¶ 2} Grandmother is the maternal grandmother of siblings R., an eight-year-old girl, N., a six-year-old boy, and A., a five-year-old girl.[1] Mother is the biological mother of

---

1. The ages of the children are as of the date this case initiated. The children are nearly three years older as of the date of this opinion.

R., N., and A.[2]

{¶ 3} In June 2016, Grandmother moved the juvenile court, ex parte, for emergency custody of the children. Grandmother alleged that Mother was physically and emotionally abusive to the children, that A. had alleged sexual abuse by Mother's boyfriend, and that Grandmother had contacted children services, which had opened an investigation into her claims. Simultaneously, Grandmother filed a complaint for custody of the children.

{¶ 4} The juvenile court granted Grandmother emergency custody of the children. The court later ordered weekly, two- or three-hour supervised visitations with Mother at Mother's home.

{¶ 5} Custody hearings began in November 2016 and were continued in progress for four additional hearing dates through August 2017. Grandmother and other family members testified that Mother had anger control issues and they had observed her acting abusively towards the children. The children's therapist reported that the children told her Mother would hit them.

{¶ 6} However, Mother denied abusing the children. The caseworker who investigated Grandmother's claims testified that the children did not disclose abuse and that Mother was a good parent. The visitation supervisor also testified favorably for Mother.

{¶ 7} In September 2017, the magistrate issued a decision recommending that the court deny Grandmother's request for custody and vacate the emergency custody order. The magistrate found that Grandmother was not credible and had not met her burden of demonstrating that Mother was an unsuitable parent. The magistrate further found that Mother, the investigating caseworker, and the visitation supervisor, all provided credible testimony.

---

2. The children's biological father is not a party to this appeal.

{¶ 8} Grandmother objected to the magistrate's decision. The juvenile court overruled the objections and adopted the decision. The court noted that Grandmother's testimony lacked credibility and that she and her family members had a vested interest in the outcome of the custody proceedings, unlike the two independent witnesses who provided favorable testimony for Mother.

{¶ 9} Grandmother appeals, raising two assignments of error, which we address collectively.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING THAT DEFENDANT-APPELLEE WAS A SUITABLE PARENT, WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 12} Assignment of Error No. 2:

{¶ 13} THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSABLE ERROR WHEN IT OVERRULED PLAINTIFF-APPELLANT'S OBJECTION TO THE MAGISTRATE'S DECISION THAT THERE HAD NOT BEEN A FINDING BY THE PREPONDERANCE OF THE EVIDENCE THAT DEFENDANT-APPELLEE WAS UNSUITABLE.

{¶ 14} This is a child custody proceeding between a parent and nonparent that did not originate from divorce proceedings. It is therefore governed by R.C. 2151.23(A)(2). *O'Conner v. Stires*, 12th Dist. Fayette No. CA2017-04-008, 2017-Ohio-8929, ¶ 17. R.C. 2151.23(A)(2) does not provide the standard to be used by the juvenile court in resolving custody disputes. However, "the overriding principle in custody cases between a parent and nonparent is that natural parents have a fundamental liberty interest in the care, custody, and management of their children." *Hockstok v. Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 16, citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388

- 3 -

(1982); *In re Murray*, 52 Ohio St.3d 155, 157 (1990). "This interest is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and by Section 16, Article I of the Ohio Constitution * * *." *Id.* citing *Santosky*; *In re Shaeffer Children*, 85 Ohio App.3d 683, 689-690 (3d Dist.1993).

{¶ 15} Ohio courts have sought to safeguard the fundamental rights of parents to the care and custody of their children by severely limiting the circumstances under which a parent may be deprived of the custody of their child. *Id.* at ¶ 17, citing *In re Perales*, 52 Ohio St.2d 89 (1977), syllabus. Accordingly, in a child custody proceeding under R.C. 2151.23(A)(2), a court may not award custody to a nonparent without first making a finding of parental unsuitability, i.e., "without first determining that a preponderance of the evidence shows that the parent abandoned the child, contractually relinquished custody of the child, or has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." *O'Conner* at ¶ 18, citing *In re Perales* at syllabus.

{¶ 16} A juvenile court's determination of whether a parent is unsuitable is a matter within the court's sound discretion. *Reynolds v. Goll*, 75 Ohio St.3d 121, 124 (1996). The discretion of the juvenile court in making child custody determinations should be accorded the utmost respect. *Id.* Because the juvenile court observed the witnesses and the parties, a reviewing court should be guided by the presumption that the juvenile court's findings were correct. *Id.* Absent an abuse of discretion, an appellate court will not reverse a juvenile court's determination in a child custody matter. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). As it relates to a manifest weight of the evidence challenge, "[w]here an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." *In re T.M.*, 12th Dist. Butler No. CA2007-01-019, 2007-Ohio-6034, ¶ 28,

citing *Flickinger* at 418.

{¶ 17} Grandmother argues that the juvenile court abused its discretion by ignoring evidence of abuse provided by her own testimony, her witnesses, and photographs. Grandmother further argues that the court gave greater weight to Mother's witnesses, who she claims lacked credibility.

{¶ 18} The evidence submitted at the hearing revealed that Grandmother arranged for the children to see a therapist shortly after the court awarded her emergency custody. The therapist testified that R. and A. both disclosed physical abuse by Mother. She diagnosed R. and A. with posttraumatic stress disorder. She did not believe the children were being coached to lie. However, the therapist did not describe the abuse alleged by the children in detail. The girls alleged that Mother "hit" them. N. said that Mother hit him in the head. The therapist also noted that the children were violent with one another.

{¶ 19} The therapist testified for a second time on the final hearing date with an update. In more recent therapy sessions, R. and A. had both alleged incidences of sexual abuse – touching of the vagina – and identified the perpetrator as Mother's boyfriend.

{¶ 20} Mother's brother testified. He had lived with Mother, Grandmother, and the children for one and one-half years until Mother and the children moved to a different home. The brother observed Mother spanking the children, screaming and shaking them, and "shoving" them into couches. He described an incident where Mother "slammed" N. to the ground. The brother claimed that he did not call children services to report the abuse because he wanted his sister to "sign the kids over for our custody." Eventually he did contact children services to report his concerns, but the agency did not return his call.

{¶ 21} Mother's sister testified that she saw N. with a hand print on his face in June 2016. She called the police to report alleged abuse after Mother called the police on her and the rest of the family. She observed Mother losing control of her emotions and

"shoving" the children. She said that Mother elbowed R. in the chest. She relayed that N. would refuse to take his clothes off because "it hurt less."

{¶ 22} Grandmother's husband testified. He said that Mother would "rage" if she had to assist the children in any way. He had observed welts on the children's buttocks, black eyes, and bruises. He said that Mother would knock the children down if they were in her way. Mother hit N. in the head. However, the husband admitted that he had not contacted police to report the abuse and could not explain why he did not. He said that the "final straw" for the family's decision to ask for custody was "continuation of the bruises," "the kids complaining about mommy's angry," and the "downfall" in the children's grades at school. The husband agreed that no one at the children's school ever reported concerns with the children's welfare.

{¶ 23} Grandmother testified that Mother had no "compassion" for the children. Grandmother claimed to have witnessed Mother physically abusing the children including that Mother had hit A., who fell and hit her head. She did not call police because "part of you wants it to not be real." Instead, Grandmother prayed and believed that God would make changes in Mother's life. She did not report the abuse to children services until it became "more prevalent."

{¶ 24} Grandmother submitted into evidence numerous photographs of the children, most of which she took, depicting indications of physical abuse by Mother. The photographs spanned several years to months prior to the emergency custody motion. Some of the photographs appear to depict welts on the children's buttocks. Other photographs allegedly depict bruising or black eyes on the children. However, many of the photographs are unclear as to the existence or severity of the injuries Grandmother alleged.

{¶ 25} Grandmother testified that she first suspected that A. had been molested in April 2016 due to her observations of the condition of A.'s vagina, which was allegedly red

and swollen. The investigating caseworker testified that A. had been taken to a child advocacy center in reference to the allegation. A. did not disclose sexual abuse at the advocacy center. The caseworker also found there to be no evidence of sexual abuse. The same caseworker conducted the investigation into Grandmother's claims that Mother was physically abusing the children. The caseworker found no evidence that the children were being physically abused, or that the children reported physical abuse. The caseworker further testified that Mother was a "good parent."

{¶ 26} Grandmother testified that she contacted police after learning that R. and A. disclosed that they were molested by Mother's boyfriend during a supervised visitation at Mother's home. The children were examined at a hospital five days after the alleged incident. The caseworker assigned to investigate testified that the physical exam indicated that the children could have been molested because the vaginal area was swollen. The caseworker spoke to R. and A. They provided "limited disclosures" of sexual abuse. She believed that the girls were honest and were not coached. Upon further questioning by Mother's counsel, the caseworker admitted that she had interviewed each child for 20 minutes. Police were informed of the disclosures. However, no criminal charges were initiated.

{¶ 27} The visitation supervisor testified concerning Mother's visits with the children. The visits always went well, Mother always acted appropriately, and the children were happy to see their Mother. The supervisor testified that the children never reported any improper behavior by Mother's boyfriend during the visits.

{¶ 28} Mother testified and denied abusing the children. She stated that the children had never alleged any inappropriate touching by her boyfriend but that when she learned of the allegation she made an appointment and took A. to the child advocacy center. With respect to the photographs, Mother testified that she found some hard to explain but that

some of the photographs depicting bruising were not surprising because children are prone to getting bruises.

{¶ 29} Upon a thorough review of the record, this court finds that the juvenile court did not abuse its discretion in finding that Grandmother did not meet her burden of producing competent and credible evidence that Mother was an unsuitable parent and denying Grandmother's complaint for custody.

{¶ 30} The juvenile court specifically found that Grandmother lacked credibility. It is well-established that the juvenile court, as the trier of fact, is free to believe all, part, or none of the testimony of each witness. *In re S.C.T.*, 12th Dist. Butler No. CA2004-04-095, 2005-Ohio-2498, ¶ 24. That is because the trial judge is best able to view the witnesses and observe their demeanor and use these observations in weighing the credibility of the proffered testimony. *In re A.B.D.*, 12th Dist. Butler No. CA2015-10-180, 2016-Ohio-7186, ¶ 17. Grandmother claimed to have witnessed or been aware of serious abuse occurring to her grandchildren. However, she admitted that she failed to report it for many years. Many of Grandmother's family members who testified also could not reasonably explain their failure to report alleged serious abuse. Additionally, the children's therapist did not testify in detail as to the alleged abuse described by the children.

{¶ 31} Grandmother argues that the court disregarded the photographic evidence in its decision. However, there is no evidence to suggest the court failed to consider the photographs. Moreover, it is difficult to discern whether many of the photographs in fact depict physical abuse and some of the photographs were taken years or months before Grandmother felt the need to obtain custody over the children.

{¶ 32} There is also no indication that the court ignored the issues regarding potential sexual misconduct by Mother's boyfriend. However, these issues were investigated by children services and either resulted in no substantiation or no further actions by the agency

or law enforcement.

{¶ 33} The juvenile court specifically found that Mother and two disinterested witnesses all provided credible testimony. The visitation supervisor testified that Mother acted appropriately and lovingly around the children, that the children were always excited to see Mother, and she had no concern for the children's welfare during the visits. The investigating caseworker testified that she believed Mother was a "good parent." Consequently, this court concludes that the juvenile court did not abuse its discretion and overrules Grandmother's first and second assignments of error.

{¶ 34} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.