[Cite as *Romohr v. Singer*, 2022-Ohio-50.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| TRICIA D. SINGER ROMOHR, | : | |
| Appellant, | : | CASE NO. CA2021-06-019 |
| | : | O P I N I O N |
| - vs - | | 1/10/2022 |
| | : | |
| BLAKE A. SINGER, | : | |
| Appellee. | : | |

APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DRC 20120091

Rion, Rion & Rion L.P.A. Inc., and Ashley N. Caldwell, for appellant.

George & Underwood L.L.P., and Krystina S. George-Underwood, for appellee.

Aryeh L. Kaufman and Olivia A. Radin, urging reversal for amici curiae Ohio Domestic Violence Network and Battered Women's Justice Project Domestic Violence Legal Empowerment and Appeals Project.

**S. POWELL, J.**

{¶ 1} Appellant, Tricia D. Singer-Romohr ("Mother"), appeals the decision of the

Clinton County Court of Common Pleas, Domestic Relations Division, granting custody of

the minor children to appellee, Blake A. Singer ("Father"), suspending her parenting time for 90 days, and declining to find Father in contempt of the court's orders. For the reasons set forth below, the trial court's judgment is affirmed.

{¶ 2} Mother and Father were married in July 2004. Two children were born issue of the marriage, H.S., born in April 2008, and A.S., born in May 2010. The parties were granted a dissolution of marriage in April 2012 and a shared parenting plan was incorporated into the final dissolution decree. Pursuant to the shared parenting plan, the children were to reside with Mother at Mother's residence, and Father would have visitation Sunday through Tuesday, and every other Saturday evening. Both parents were deemed the residential parent of the children, but Mother was designated the residential parent for school purposes.

{¶ 3} Less than one year later, in February 2013, Mother moved the trial court to suspend Father's parenting time and to terminate the shared parenting agreement due to events that caused Mother to become "extremely fearful for the imminent physical and emotional welfare of the minor children[.]" The magistrate appointed a guardian ad litem for the children and set the matter for a hearing. Prior to the hearing, the parties reached an agreement to terminate the shared parenting agreement, designate Mother the children's legal custodian and residential parent, and to modify Father's parenting time to every Wednesday evening and every other weekend. On August 22, 2014, after a hearing was held regarding the parties' agreement, the trial court issued an order terminating the 2012 shared parenting agreement and adopting the agreement of the parties ("2014 Parenting Order").

{¶ 4} In the years that followed, both Mother and Father remarried and expanded their families. Father married the children's stepmother ("Stepmother") in 2014 and the couple had two daughters together. Mother married the children's stepfather ("Stepfather")

- 2 -

in 2015 and the couple had two sons together. The children were well bonded with their half-siblings until 2018, when their relationship with their half-sisters began to deteriorate.

{¶ 5} On December 26, 2018, Father moved the trial court to find Mother in contempt for violating the 2014 Parenting Order. In support, Father claimed Mother had denied him parenting time since December 7, 2018, when she learned the children were sleeping in the finished basement of Father's home during their overnight visits.

{¶ 6} On February 1, 2019, Mother filed three motions with the trial court: a motion to appoint a guardian ad litem for the children; a request for the trial court to order Father to have his home inspected by the Clinton County building and zoning departments; and a motion for the trial court to modify the parties' parenting time. The trial court reappointed the guardian ad litem and set the remaining matters for a hearing.

{¶ 7} On May 9, 2019, a hearing was held before the magistrate regarding Father's December 2018 contempt motion. At the hearing, Mother testified she withheld the children from Father for a period of six months due to her belief that his home was unsafe for the children. Based upon Mother's admission, the magistrate found Mother in contempt for failing to follow the 2014 Parenting Order and reserved ruling on sentencing at that time.

{¶ 8} On May 31, 2019, Father moved the trial court for custody of the children. The record reflects the parties subsequently began joint parenting counseling and were "making good progress" as of September 2020. This progress resulted in Father moving the trial court for shared parenting in October 2020.

{¶ 9} On December 1, 2020, Mother moved the trial court for an increase in child support and requested the trial court to order supervised parenting time for Father. Mother also filed a motion to show cause, requesting Father to show why he should not be held in contempt of court for his failure to abide by the 2014 Parenting Order and the final decree of dissolution. Specifically, Mother claimed Father failed to comply with Sections 4(A), (C),

and (F), as well as Section 6(B) of the 2014 Parenting Order by engaging in a physical altercation with H.S., making derogatory comments to the children, failing to provide secondary health insurance for the children, and interfering with Mother's telephone communication with the children while they were with Father. Mother also claimed Father violated the final decree of dissolution by failing to make timely monthly mortgage and utility payments for the marital residence, which caused the home to go into foreclosure.

{¶ 10} On December 29, 2020, Father moved the trial court to suspend Mother's parenting time due to severe parental alienation. Father claimed Mother had "systemically and continually interfered and manipulated the children and their relationship with Father, and that her parenting time "may need to be suspended" in order for Father to repair his relationship with his sons through an "intense parental alienation program."

{¶ 11} On January 25, 2021, a three-day hearing before the magistrate commenced. At the hearing, the magistrate considered evidence related to eight post-decree motions filed by the parties between December 2018 and December 2020. Mother presented testimony from seven witnesses, including herself, a family friend, a deputy with the Clinton County Sheriff's Office, an officer with the Wilmington Police Department, the children's massage therapist, the children's counselor, and the children's guardian ad litem. Mother's case focused on several prior investigations into Father by children's services and various law enforcement agencies, in addition to issues that occurred during Father's parenting time and the children's overall negative relationship with Father.

{¶ 12} Father also presented testimony from seven witnesses, including himself, Stepmother, H.S.'s former teacher, expert witness Linda Gottlieb, the children's paternal grandfather, a caseworker from children's services, and Mother's prior counsel in this case.

{¶ 13} The crux of Father's case stemmed from the testimony of Gottlieb, a licensed marriage and family therapist. Gottlieb specializes in the treatment of severe cases of

parental alienation, which is "a highly dysfunctional cross-generational alliance between the child and the triangulating parent to the disruption, dismissal and sometimes utter rejection of the child's other parent absent a bona fide protective reason." Gottlieb testified as a generic expert witness, whose intent was to "educate the trier of facts (sic) about alienation and that it's child abuse" that can be effectively treated. As a generic witness, Gottlieb did not have any specific knowledge of the facts of the instant case, nor did she testify specifically regarding Mother, Father, or their relationships with the children. Rather, most of Gottlieb's testimony concerned the "eight manifestations" that are used to predict and "virtually diagnose" an alienating child to a degree of 99 percent accuracy, as well as the recommended treatment in severe cases.

{¶ 14} Where the court finds there is severe parental alienation, Gottlieb contends traditional reunification will not work. Instead, Gottlieb recommends her Turning Points Program, which is a four-day family therapy program that jumpstarts the reconnection between a child and the alienated parent. Gottlieb testified that the court is required to make an independent finding, in "whatever language it uses," that parental alienation exists in a case, and conclude that the alienation is severe enough to warrant participation in the Turning Points Program.

{¶ 15} After the presentation of the evidence and each party's closing argument, the magistrate orally granted Father's motion for custody, suspended Mother's parenting time, and ordered the parties to participate in Gottlieb's Turning Points Program. Thereafter, the magistrate issued a detailed decision regarding the post-decree motions.

{¶ 16} In her decision, the magistrate began with Mother and Father's motions for contempt. Regarding Mother's previous adjudication for contempt of the 2014 Parenting Order, the magistrate found Mother had purged the contempt finding by providing makeup parenting time to Father. As it pertains to Mother's motion to show cause, the magistrate

found Mother failed to meet her burden of proof that Father violated the court's orders and dismissed her motion.

{¶ 17} Concerning the parties' motions to modify parenting time and Father's request for a change in custody, the magistrate found there was a change of circumstances and that modification of the current parenting order was in the best interest of the children. The magistrate conducted a detailed examination of the best interest factors of R.C. 3109.04(F)(1), including an in-depth analysis of the eight manifestations of parental alienation, as set forth by Gottlieb, and their presence in this case. The magistrate also included a review of Gottlieb's Turning Points Program, which is used to treat severe alienation cases and involves a four-day intensive intervention period followed by outpatient therapy. After her review of the relevant factors, the magistrate concluded that all eight manifestations are present in this case, and there is an immediate need for intervention to repair the children's relationship with Father.

{¶ 18} Regarding parenting time, the magistrate considered the best interest factors of R.C. 3109.051(D) before allocating the parental rights and responsibilities to Father and designating him the residential parent and legal custodian of the children. The magistrate ordered the parties to participate in the Turning Points Program and that the cost of the program would be split equally between the parties. The magistrate further ordered a 90-day sequestration period between the children, Mother, and her family members, and noted the sequestration period could be shortened at the discretion of Gottlieb. After completion of the Turning Points Program, the magistrate ordered that Mother shall have liberal parenting time with the children as the parties agree, but not less than the standard order of parenting time.

{¶ 19} Two days after the magistrate issued her decision, Father moved the trial court for an emergency interim order directing Mother to relinquish the children to Father.

The trial court issued an interim order the same day, which adopted part of the magistrate's decision, including the allocation of parental rights and responsibilities to Father, his designation as the residential parent and legal custodian of the children, the magistrate's order for the parties to participate in the Turning Points Program, and the 90-day sequestration period. Mother then released the children to Father that evening.

{¶ 20} Mother filed objections and supplemental objections to the magistrate's decision and the trial court held a hearing. On May 25, 2021, the trial court issued a decision overruling Mother's objections and adopting the magistrate's decision in its entirety. In so doing, the trial court specifically noted that

> [w]ith such a voluminous case file, the court understands how each party can point to certain facts in the record allegedly not specifically addressed by the Magistrate in her Decision. The Decision is not a perfect document. However, the court finds the Decision to be a carefully crafted and well supported record of the proceedings conducted before the Magistrate.
>
> More importantly, after an independent review of the record, the court finds the ultimate Decision results in conclusions with which the undersigned Judge agrees. While the Court could supplement the Decision supportive of the Magistrate's recommendations with independent reasoning of its own, the goal is not to file a perfectly supported Decision but to file the correct Decision.

{¶ 21} Mother now appeals, raising three assignments of error for our review.

{¶ 22} Assignment of Error No. 1:

{¶ 23} THE TRIAL COURT ERRED AS AN ABUSE OF DISCRETION IN FINDING THAT RESIDENTIAL AND LEGAL CUSTODY OF THE MINOR CHILDREN SHOULD BE GRANTED TO MR. SINGER, WITH AN IMMEDIATE SUSPENSION OF MS. ROMOHR'S PARENTING TIME, AND THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 24} Mother first argues the trial court's decision to award custody of the children

to Father is against the manifest weight of the evidence and constitutes an abuse of discretion. We disagree.

{¶ 25} As an initial note, "we acknowledge that 'the power of the trial court to exercise discretion is peculiarly important in proceedings involving the custody and welfare of children.'" *Forney v. Forney*, 12th Dist. Clermont No. CA2011-08-057, 2012-Ohio-3427, ¶ 12, citing *Kenney v. Kenney*, 12th Dist. Warren No. CA2003-07-078, 2004 Ohio 3912, ¶ 6. "The discretion a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination has on the lives of the parties concerned." *Id.*; see also *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). Therefore, the trial court's determinations shall be reviewed under an abuse of discretion standard. *Id.* at ¶ 12. The term abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 26} "In reviewing a custody determination, an appellate court must 'review the record to determine whether there is any evidence in support of the prevailing party.'" *Sallee v. Sallee*, 142 Ohio App.3d 366, 370 (12th Dist.2001), citing *Ross v. Ross*, 64 Ohio St.2d 203, 206 (1980). "While reviewing the record, the appellate court must keep in mind that the trial court is better equipped to examine and weigh the evidence and to make decisions concerning custody[.]" *Sallee* at 370; *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988).

{¶ 27} In determining whether a modification of custody is warranted, a court must follow R.C. 3109.04(E)(1)(a), which provides, in pertinent part:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, * * * and that the modification is necessary to serve the best interest of the child.

- 8 -

{¶ 28} In applying these standards, the trial court shall retain the residential parent designated in the prior decree unless a modification is in the child's best interest and the harm likely to be caused by the change of environment is outweighed by the advantages of the change to the child. R.C. 3109.04(E)(1)(a)(iii); *Forney* at ¶ 13.

{¶ 29} In the case sub judice, Mother claims the trial court's award of custody to Father is against the manifest weight of the evidence. The "weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." *In re R.*, 12th Dist. Madison No. CA2018-04-012, 2019-Ohio-1198, ¶ 16, citing *Flickinger* at 418.

{¶ 30} In a manifest weight analysis, "the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Schneble v. Stark*, 12th Dist. Warren Nos. CA2011-06-063 and CA2011-06-064, 2012-Ohio-3130, ¶ 67; *Forney* at ¶ 34. "[E]very reasonable presumption must be made in favor of the judgment and the finding of facts." *Volkman* at ¶ 21. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment[.]" *Id.*

{¶ 31} Mother first argues the trial court failed to consider most of the witnesses she called to testify at the final hearing and included findings of fact that are inconsistent with the record. In support, Mother claims the magistrate's decision only details testimony from

Gottlieb and the guardian ad litem, and did not mention "nearly every witness who presented favorable testimony on [Mother's] behalf[.]"

{¶ 32} As noted above, both parties presented a significant amount of testimony and evidence at the final hearing. After a review of the trial court's decision, it is apparent the magistrate, and subsequently the trial court, considered the entirety of the testimony provided at the hearing. This is particularly evident given the trial court's recitation of numerous, specific examples of conduct by the parties throughout the case. While the decision does not specifically reference each testifying witness by name or fully summarize each witness's testimony, such a fact is not indicative that the trial court did not consider the entirety of the testimony presented. Rather, a "reviewing court may make assumptions regarding the trial court's consideration of evidence and application of relevant statutory requirements." *Forney* at ¶ 31, citing *Sayre v. Hoelzle-Sayre*, 100 Ohio App. 3d 203, 212 (3d Dist.1994); *In re Dye*, 12th Dist. Fayette Nos. CA2011-04-004, CA2011-04-005, and CA2011-04-006, 2012-Ohio-2570, ¶ 59.

{¶ 33} Mother also claims that minor misstatements of fact render the trial court's decision against the manifest weight of the evidence. We disagree. When reading the trial court's decision in its entirety, it is apparent that the "inconsistent" statements pointed out by Mother, including the misstatement that the guardian ad litem learned of a derogatory comment via H.S. rather than Stepmother, are inconsequential to the trial court's decision as a whole and do not undermine the validity of its decision to award custody to Father.

{¶ 34} Mother also takes issue with the magistrate's decision to issue a ruling from the bench at the conclusion of closing arguments. Mother contends the magistrate demonstrated frustration over the length of the case at that time and that "a large part of the Decision was based on the unproven allegation that [Mother] made a nursing board complaint against [Stepmother]."

{¶ 35} After a review, we disagree with Mother's characterization of the magistrate's comments at the end of the hearing. The record reflects that after closing arguments, the magistrate addressed the parties "face to face" in order to provide context for her written opinion that followed. In so doing, the magistrate noted frustration with herself and the court that she had allowed the case to remain pending for nearly three years, in hopes that the parties would "get the children where they needed to be." However, in allowing the case to remain pending, the magistrate ignored the "red flags" in this case, and the children were continually victimized. At the end of the magistrate's comments, she noted that

> the one thing that really got me as far as quickly as it did is – there is no doubt in my mind that you played a hand in reporting [Stepmother] to the nursing board. * * * [B]efore I learned that information in this hearing, * * * I'm thinking a good caring parent could be doing this and not realizing that what they're doing is not in the best interest of the children. So sometimes we disagree on that. That one behavior * * * shows me that you're acting not in the best interest of the children, you're acting out of revenge or a need to hurt your ex-husband[.] * * * That was a big factor in what I'm doing here[.]

{¶ 36} After a review of the magistrate's comments in their entirety, we decline to find that such statements were prejudicial to Mother or rendered the trial court's custody determination against the manifest weight of the evidence. It is clear from the record the magistrate was frustrated with the status of the case after believing the parties could reach an agreement. However, based upon the continued victimization of the children and outward hostility between the parties, including the magistrate's belief that Mother intended to hurt Father through her actions, the magistrate decided immediate action at the conclusion of the hearing was in the children's best interest and was necessary to salvage their relationship with Father. We do not find that such action renders the trial court's decision against the manifest weight of the evidence.

{¶ 37} Mother also argues the trial court abused its discretion in giving significant

weight to Gottlieb's testimony despite her "strong motivation" to "make a finding of parental alienation and refer people to her program." The record reflects Mother and Father stipulated that Gottlieb was an expert and that she did not testify to any specific facts pertaining to this case or provide any opinion as to Mother, Father, or the children. Rather, Gottlieb testified as a generic witness, whose role was to inform the trial court of parental alienation strategies and its manifestations. Gottlieb reiterated during her testimony that only the trial court could make a finding of parental alienation and only the trial court could determine the alienation was severe enough to order participation in her program. Gottlieb testified that other, similar programs were available, however, a family from Ohio had participated in the Turning Points Program in the past and her program had a high success rate.

{¶ 38} On cross-examination, Gottlieb denied that she makes a "significant amount of money" when someone is referred to the Turning Points Program, and estimated she makes approximately $75 per hour after considering the two-year follow-up. Gottlieb also acknowledged that the phenomenon of parental alienation has been criticized, there are few parental alienation programs, and that some nonscientists believe the defense is a way to place children in the care of their abusers.

{¶ 39} After a review of the above, we find the trial court did not act unreasonably or arbitrarily in giving significant weight to Gottlieb's testimony and in ordering the Turning Points Program. The trial court clearly found Gottlieb credible in her explanation of parental alienation, despite scrupulous cross-examination by Mother. Regarding any bias or financial incentive to testify against Mother, there is no evidence in the record that Father's pretrial payment to Gottlieb to testify as an expert witness rendered her testimony biased or untruthful. Rather, it is typical practice to pay an expert witness for her time and expertise. Furthermore, because Gottlieb was unaware of the underlying facts of this case, and did

not offer any opinion as to whether parental alienation existed here, there is no possibility she could have known that any specific testimony would result in the trial court ordering participation in her program.

{¶ 40} The remainder of Mother's arguments under this assignment of error relate to the trial court's determination that Mother engaged in parental alienation. In support, Mother again points to specific evidence she believes the trial court failed to consider. "We are mindful that the 'knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record, and the reviewing court should be guided by the presumption that the trial court's findings are correct.'" *Forney*, 2012-Ohio-3427 at ¶ 28, citing *Kenney*, 2004-Ohio-3912 at ¶ 7; *Miller*, 37 Ohio St.3d at 74. Thus, although Mother believes the trial court should have relied more heavily on the testimony from her witnesses prior to making its custody determination, the trial court was in the best position to observe the witnesses and make credibility determinations. *Id.* at ¶ 41. Accordingly, the mere fact that the trial court chose to rely on other evidence in the record does not equate to the trial court clearly losing its way and creating a manifest miscarriage of justice. *Id.*

{¶ 41} Upon a careful review of the record, the trial court's custody determination was based upon credible evidence that Mother engaged in a pattern of behavior that has caused alienation between the children and Father, and that such an environment is unsafe for the children. The trial court's decision is supported by competent, credible evidence in the record, and we therefore conclude the trial court did not abuse its discretion in awarding custody to Father.

{¶ 42} Finding no merit to Mother's claims, Mother's first assignment of error is overruled.

{¶ 43} Assignment of Error No. 2:

{¶ 44} THE TRIAL COURT ERRED AS AN ABUSE OF DISCRETION IN FAILING TO PROPERLY EVALUATE THE BEST INTEREST OF THE CHILD FACTORS PURSUANT TO R.C. 3109.04(F)(1).

{¶ 45} In her second assignment of error, Mother claims the trial court abused its discretion in its weighing of the best interest factors, and in concluding that awarding custody to Father was in the children's best interest.

{¶ 46} "According to R.C. 3109.04(E)(1)(a), once a change in circumstances has been established, the trial court can modify custody only if 'the modification is necessary to serve the best interest of the child.'" *Forney* at ¶ 23, citing *In re R.A.S.*, 12th Dist. Warren No. CA2011-09-102, 2012-Ohio-2260, ¶ 30. In order to determine the best interest of a child, R.C. 3109.04(F)(1) requires the trial court consider all relevant factors. These factors include, but are not limited to:

> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;
>
> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
>
> (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1)(a)-(j).

{¶ 47} Mother initially argues the trial court should have given more weight to the wishes of the children pursuant to R.C. 3109.04(F)(1)(a). In support, Mother points to testimony from Carole Bower, who was the children's counselor at the time of the hearing, and the children's comments to their guardian ad litem that they do not want to live with Father.

{¶ 48} At the hearing, the magistrate heard testimony that the children do not want to live with Father, are well bonded to Mother, and that removing the children from Mother's care would be traumatic for them. However, the magistrate also heard testimony from Gottlieb that it is a "big misconception" that removing children from the alienating parent's care will be traumatizing, and that in her experience, children oftentimes threaten negative reactions, but do not carry through. The magistrate specifically noted at the end of the hearing that placing the children in Father's care would not be easy for the children, but "the trauma they have already suffered by having dad yanked from them * * * has already caused trauma." After considering the testimony, the trial court found there was an immediate need to repair the relationship between Father and the children before it was damaged beyond repair and possible life-long psychological damage to the children occurred.

{¶ 49} Given the evidence in the record, we cannot say the trial court failed to

- 15 -

consider the children's wishes as described to the guardian ad litem or admitted through Bower's testimony. Rather, it is evident the trial court considered the children's wishes, their hostility toward and general dislike of Father at the time of the hearing, as well as their deteriorating relationship, but gave greater weight to the testimony suggesting Mother had greatly manipulated the children and alienated Father from them, and that removal from Mother's care would not result in additional trauma for the children. We will not second-guess the judgment of the trial court in evaluating the evidence and assessing the credibility of the witnesses. *Wilkerson v. Wilkerson*, 12th Dist. Butler Nos. CA2004-02-043 and CA2004-02-046, 2005-Ohio-1236, ¶ 20.

{¶ 50} Mother also disputes the trial court's finding pursuant to R.C. 3109.04(F)(1)(c) that the children had a loving relationship with Father until December 2018. Mother indicates there is no evidence substantiating Father's testimony that he and the boys shared a loving relationship. At the hearing, Father testified that from 2014 until Mother began denying Father parenting time in 2018, he and the children had a good relationship. Father noted that prior to that time, he would play sports with the boys and teach them life skills. Father indicated that a barrier in their relationship worsened throughout the years, but the lack of parenting time between December 2018 and May 2019 "really beat down" the relationship. Stepmother similarly testified and indicated she had observed a decline in Father's relationship with the boys over the last "couple of years," and that the boys had become "very defiant" and disrespectful to Father in that time. The children's grandfather also testified that the children's behavior toward Father had worsened over the previous two or three years. If believed, such testimony supports that the children previously shared a loving relationship with Father.

{¶ 51} The trial court also did not abuse its discretion in finding that Father is the parent more likely to facilitate court-approved parenting time. Although Mother claims the

trial court improperly concluded she "continually and willfully" denied Father parenting time, the record reflects Mother denied Father parenting time between November 2018 and May 2019. There is no evidence Father denied Mother any parenting time. Thus, although Mother argues the trial court should have placed more weight on the fact that she had not withheld parenting time since May of 2019, the trial court was free to conclude that Mother would deny Father parenting time in the future, like she had in the past, if she believed the children were in an unsafe environment.

{¶ 52} While it is clear that Mother disagrees with the trial court's decision, Mother merely challenges how much weight the trial court should have given to each of the best interest factors outlined above. But, "[i]t is the role of the trial court to determine the relative weight to assign each factor, in relation to the others, when determining the children's best interest." *Ruble v. Ruble*, 12th Dist. Madison No. CA2010-09-019, 2011-Ohio-3350, ¶ 18. That is to say it is the trial court, not this court, who is "entitled to consider this evidence and determine the relative weight to assign to it in examining the best interest factors." *Harmon v. Radcliff*, 12th Dist. Butler No. CA2017-04-047, 2017-Ohio-8682, ¶ 48.

{¶ 53} "This court should not, and will not, second-guess the [trial] court's decision in regard to the appropriate weight to be given to any one of those factors." *Mack v. Mack*, 12th Dist. Butler No. CA2018-09-179, 2019-Ohio-2379, ¶ 33, citing *Albert v. Albert*, 2d Dist. Montgomery No. 24000, 2010-Ohio-6112, ¶ 32 ("[w]e defer to the trial court's determinations of the parties' credibility and of the appropriate weight to be given to the statutory factors"). This is because, as noted above, the discretion that a lower court enjoys in custody matters "'should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *In re J.M.*, 2009-Ohio-4824 at ¶ 17, quoting *Miller*, 37 Ohio St.3d at 74.

{¶ 54} Based on a balancing of the factors and after a review of the entire record, we

find the trial court did not abuse its discretion in weighing the best interest factors and in awarding custody of the children to Father. As such, Mother's second assignment of error is overruled.

{¶ 55} Assignment of Error No. 3:

{¶ 56} THE TRIAL COURT ERRED AS AN ABUSE OF DISCRETION IN DENYING MS. ROMOHR'S MOTION FOR CONTEMPT.

{¶ 57} In her remaining assignment of error Mother claims the trial court abused its discretion in not finding Father in contempt of the court's orders. As noted above, Mother claims Father violated the 2014 Parenting Order and the 2012 dissolution decree by (1) calling the children obese, fat, and lazy; (2) getting into a physical altercation with H.S. when the child refused to change into the clothes Father selected; (3) failing to provide secondary health insurance for the children; (4) "continually interfere[ing] with [the children's] ability to speak with" Mother; and (5) failing to make timely mortgage payments.

{¶ 58} Contempt of court is defined as "disobedience of an order of a court * * * which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Hueber v. Hueber*, 12th Dist. Clermont Nos. CA2006-01-004, CA2006-02-019, and CA2006-02-020, 2007-Ohio-913, ¶16, citing *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55 (1971), paragraph one of the syllabus. To support a contempt finding, the moving party must establish by clear and convincing evidence that a valid court order exists, that the offending party had knowledge of the order, and that the offending party violated such order. *Underleider v. Underleider*, 12th Dist. Clermont Nos. CA2010-09-069 and CA2010-09-074, 2011-Ohio-2600, ¶ 36.

{¶ 59} This court will not reverse the trial court's ruling on a motion for contempt absent an abuse of discretion. *Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 12. As stated above, an abuse of discretion implies that the trial court's

attitude is unreasonable, arbitrary, or unconscionable, and is more than a mistake of law or judgment. *Blakemore*, 5 Ohio St.3d at 219.

{¶ 60} The parties' dissolution decree and the 2014 Parenting Order were valid court orders, and the parties do not dispute that Father was aware of those orders. The 2014 Parenting Order prohibited either parent from making comments about the children's clothing, calling the children names, or "putting the children down." It also states the children are permitted to wear the clothes of their choice. Mother claims Father violated these provisions by making derogatory comments pertaining to the children's clothing and weight.

{¶ 61} After a review, we find the trial court did not abuse its discretion in finding Mother failed to prove Father violated the court order in this regard. At the hearing, Mother testified that on one occasion Father made A.S. "feel like he had called him fat" by using the words "obese and lazy." However, Mother further indicated that "may not" have been what Father "truly meant[.]" Based upon Mother's testimony, it is unclear whether Father made a derogatory comment about A.S.'s weight on that occasion. We also disagree with Mother's argument that Exhibit 22 proves Father made derogatory comments regarding the children's clothing. Exhibit 22 is an audio video of an incident between H.S. and Father at Father's home. During the relevant portion of the video, someone is heard asking H.S. to put on some clothes because "he asked him to." H.S. responded that he did not want to change his clothes for church and did not want to be judged. During this encounter, Father is not heard making any derogatory comment regarding H.S.'s clothing or appearance. Rather, someone other than Father requested H.S. to change his clothing for church and asked why he will not follow Father and Stepmother's rules. Accordingly, Exhibit 22 does not provide any basis for finding Father in contempt of the trial court's orders.

{¶ 62} Additionally, although Mother contends that Bower's comment to the guardian

ad litem that Father is aggressive and "screams" in the children's faces is indicative of a violation of the 2014 Parenting Order, such a broad allegation is insufficient to prove that Father made derogatory remarks about the children on any specific occasion. Notably, Mother did not point to, in her affidavit or at the hearing, any specific comment or occasion where Father screamed or aggressively made a derogatory comment regarding the children's hair or clothing, and we decline to assume Father made any such remarks. Consequently, without referencing any specific comments made by Father, Mother has not demonstrated by clear and convincing evidence that Father was in violation of Sections 4(A), (C), or (D) of the 2014 Parenting Order.

{¶ 63} We similarly conclude that Mother presented insufficient evidence to prove Father violated Section 4(F) of the 2014 Parenting Order by "continually interfering" with her telephone time with the children. As noted by the trial court, Mother failed to reference, in her motion or at the hearing, any specific date that Father interfered with her telephone time in violation of the court order. Instead, Mother vaguely testified at the hearing that "the denial of phone time" started when she provided makeup time to Father in May of 2019. On cross-examination, Father indicated that during a 12-day trip with the children Mother did not receive daily phone calls, but he further testified he did not deny Mother any phone time during that period.

{¶ 64} Father's counsel alleged at the hearing that the parties agreed, during a conference with the magistrate, that telephone time would be limited to one phone call per weekend during the timeframe at issue. While the record is devoid of any such agreement between the parties, the 2014 Parenting Order only required Father to "allow" the children to converse on the telephone with Mother for 15 minutes each day. Mother did not provide any evidence that Father did not allow the daily phone calls to take place, or that he was responsible for any of the missed phone calls beginning in May 2019. Accordingly, the trial

court did not abuse its discretion in declining to conclude that Father prevented the children from conversing with Mother via telephone.

{¶ 65} We also find the trial court did not abuse its discretion in finding Mother failed to prove Father violated the court order by failing to obtain secondary health insurance for the children. The 2014 Parenting Order required Father to obtain private health insurance coverage for the children if the coverage was available at a reasonable cost and was not unnecessarily duplicative of coverage. Mother did not present any evidence that the health insurance Father could have provided in December 2020 was not unnecessarily duplicative in coverage or was reasonable in cost.

{¶ 66} Lastly, the trial court did not abuse its discretion in failing to find Father in contempt for failing to pay the mortgage on the former marital home. The parties' dissolution decree was entered on April 11, 2012, and indicated that the home was to "immediately" be listed for sale and that Father was required to "timely pay the monthly mortgage obligation, [and] real estate taxes" until the home was sold. Mother testified that the home was foreclosed on May 31, 2012, the date Mother claimed the "sheriff came and took the house," but the foreclosure action was "filed well before that." As a result of the foreclosure, Mother "had no choice at that time * * * but to file bankruptcy," which she filed in July 2012. A sheriff's deed was also introduced into evidence by Mother, which indicates the home was sold to Wilmington Savings Bank for $105,000, a confirmation of that sale was entered on June 25, 2013, and the deed was issued on July 23, 2013.

{¶ 67} Despite introducing evidence regarding the eventual foreclosure and sale of the home, Mother did not produce any evidence regarding the missed payments that resulted in the home's foreclosure, or whether those payments were missed by Father after the decree was entered in April 2012. Given this lack of evidence, it was not unreasonable or arbitrary for the trial court to conclude that Mother failed to prove that Father violated the

dissolution decree.

{¶ 68} Accordingly, because the trial court did not abuse its discretion in dismissing Mother's motion to show cause, we overrule Mother's remaining assignment of error.

{¶ 69} Finding no merit to any of the arguments raised herein, we affirm the judgment of the trial court in its entirety

{¶ 70} Judgment affirmed.

PIPER, P.J., and BYRNE, J., concur.